PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 20-2469

———————

JANE DOE,

Appellant

v.

THE COLLEGE OF NEW JERSEY

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:19-cv-20674)
District Judge:  Hon. Freda Wolfson

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
April 13, 2021

Before:   CHAGARES, JORDAN, and SCIRICA, *Circuit
Judges.*

(Filed:  May 18, 2021)

———————

Sergey Joseph Litvak
Litvak Legal Group
3070 Bristol Pike, Suite 1-204
Bensalem, PA 19020
        *Counsel for Appellant*

Gurbir S. Grewal
Raajen V. Bhaskar
Matthew J. Lynch
Office of Attorney General of New Jersey
        Division of Law
25 Market Street, 1st Floor
P.O. Box 112
Hughes Justice Complex
Trenton, NJ 08625
        *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Jane Doe sued The College of New Jersey ("TCNJ" or "the College"), alleging retaliation and employment discrimination based on gender, national origin, and pregnancy. The District Court denied her motion to proceed anonymously, and she now seeks appellate review. While we conclude that, under the collateral order doctrine, we may hear an appeal from the denial of a motion to proceed anonymously, Doe does not present a case meriting permission to do so. We will therefore affirm.

## I.    BACKGROUND[1]

Doe began her employment as a tenure-track Assistant Professor at TCNJ's School of Business in the fall of 2016. Before starting, she gave birth to her third child. She alleges that the Dean of the School of Business and the School of Business's Department of Finance Chair made inappropriate comments about her recent pregnancy and her family, suggesting that they were relieved to think she was through having children and would not need pregnancy related accommodations in the future.

Doe received positive peer reviews for classes she taught in 2017. But, after becoming pregnant with her fourth child, Doe says that the College faculty began to turn on her. She was reassigned from one of her upper-level finance classes to a lower-level finance class with about twice as many students, "result[ing] in an abnormally hard teaching arrangement." (App. at 37 ¶¶ 51, 52.) After Doe had her fourth child, the Dean, the Department of Finance Chair, and other employees, on multiple occasions asked Doe if she was "done having more children." (App. at 38 ¶ 63.)

She was not, and she notified TCNJ in writing soon thereafter that she was pregnant again. In October 2018, a high-ranking TCNJ professor attended the same class that the professor had positively reviewed in 2017 but gave Doe a more negative review than before, although Doe claims there were

---

[1] The facts recounted here are drawn from Doe's complaint.

no material changes in the class from the previous year.[2]  Also in October, the former Department of Finance Chair visited one of Doe's classes and reported "non-material deficiencies" in her teaching style, whereas he had given her a positive peer review when he visited a class of hers in 2017.  (App. at 40 ¶ 81.)  Doe reported the allegedly discriminatory reviews to the Interim Provost, formerly the Dean, who did not forward the complaint and instead "supposedly placed a record of discipline" in Doe's personnel file.  (App. at 40 ¶¶ 83-85.)  Doe contends that the record of discipline was reported to the Promotion and Reappointment Committee to "deprive her of a fair reappointment process."  (App. at 41 ¶ 89.)  She claims she subsequently "suffered emotional trauma, became depressed, and had a miscarriage."  (App. at 41 ¶ 91.)

In 2019, Doe applied to renew her contract with the College and allegedly faced continued discriminatory and retaliatory treatment during the renewal process.  She says that, in one meeting, she was falsely accused of cancelling classes and that the accusation was supported by fake or "doctored" student comments.  (App. at 44, 45 ¶¶ 117-18, 125-26.)  Doe was not reappointed to her teaching position.

---

[2] We note that there is a discrepancy in the complaint as to whether the same professor reviewed the same class in 2017 and 2018.  *Compare* App. at 36 ¶ 44 ("On March 27, 2017, Dr. Choi attended Doe' [sic] FIN 201 Class and gave her a very positive review.") *and* App. at 37 ¶ 56 ("On November 11, 2017, Dr. Mayo attended Doe's FIN 330 Class and issued a positive peer-review.") *with* App. 40 ¶ 77 ("On October 1, 2018 Dr. Choi attended the same class FIN330 as in 2017.").  That discrepancy is immaterial to our holding.

She then filed a charge of discrimination with the EEOC, which issued a right to sue letter, and she filed this suit, alleging gender, national origin, and pregnancy discrimination, as well as retaliation, in violation of Title VII of the Civil Rights Act and the New Jersey Law Against Discrimination. Shortly after filing her complaint, she moved to proceed anonymously.  The magistrate judge denied that motion, and the District Court affirmed the magistrate judge's holding. Applying a multi-factor balancing test to weigh Doe's interest in anonymity against the public's interest in knowing the true identity of the parties, the Court held that Doe did not present the kind of exceptional circumstances that would permit her to proceed anonymously.  Nevertheless, the Court stayed the implementation of its order, pending the outcome of this timely appeal.

## II.    DISCUSSION[3]

### A.    We have jurisdiction to hear the appeal under the collateral order doctrine.

The College challenges our jurisdiction to hear this appeal.[4]  Although our jurisdiction is generally limited to "final decisions of the district courts[,]" 28 U.S.C. § 1291, we may also review a "small class" of non-final orders under the

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1367.  TCNJ contests our jurisdiction on appeal.  "We necessarily exercise *de novo* review over an argument alleging a lack of appellate jurisdiction."  *United States v. Mitchell*, 652 F.3d 387, 391 (3d Cir. 2011) (en banc) (quoting *Reilly v. City of Atlantic City*, 532 F.3d 216, 223 (3d Cir. 2008).  The denial of a motion to proceed anonymously is reviewed for abuse of discretion.  *Doe v. Megless*, 654 F.3d 404, 407 (3d Cir. 2011).  A district court abuses its discretion if its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact or when no reasonable person would adopt the district court's view."  *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 858 F.3d 787, 792 n.22 (3d Cir. 2017) (internal quotation marks and citations omitted).

[4] TCNJ argues that, because we have never held that orders denying motions to proceed anonymously fall within the collateral order doctrine, we lack jurisdiction to hear the appeal.  But we have also never held that such orders are not appealable, so we approach the issue as one of first impression.  TCNJ does not present any substantive argument precluding our appellate review.

collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). To fall within the collateral order doctrine, the order must (1) conclusively determine the disputed issue, (2) resolve an important issue separate from the merits of the action, and (3) be "effectively unreviewable" on appeal from a final judgment. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (citing *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 40 (1995)).

In determining whether we have jurisdiction over a non-final order, we focus on "the entire category to which a claim belongs" and do not engage in an "individualized jurisdictional inquiry." *Id.* at 107 (citations omitted). We therefore apply the three-prong *Cohen* test to the general category of orders denying motions to proceed anonymously.

First, an order denying a motion to proceed anonymously does conclusively decide whether the litigant has to disclose his or her true identity. Absent appellate review, the order would, once and for all, preclude a party's ability to proceed anonymously. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 376 (7th Cir. 2016). In other words, it would be impossible for a district court to meaningfully reconsider its order once the litigant amends the pleadings to include his or her real name. *Cf. Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 56 (3d Cir. 1991), *as amended on denial of reh'g* (Nov. 13, 1991) (holding, under the first *Cohen* prong, that "[w]e can perceive of no circumstances under which the district court would revisit the legal question" at issue).

The second prong is also satisfied because an order denying a motion to proceed anonymously resolves an important issue separate from the underlying merits of the

dispute. The moving party must prove both the importance and separateness of the issue under consideration. *United States v. Mitchell*, 652 F.3d 387, 395 (3d Cir. 2011) (en banc). "[A]n issue is important if the interests that would potentially go unprotected without immediate appellate review are significant relative to efficiency interests sought to be advanced by adherence to the final judgment rule." *In re Search of Elec. Commc'ns*, 802 F.3d 516, 524 (3d Cir. 2015). The interests asserted by litigants seeking anonymity can be enormously significant when compared to the interest in efficient litigation; in certain cases, severe harm may result from litigating without a pseudonym. *See James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) ("[W]e think it presents a serious question— whether anonymity may be so refused—that requires settlement for precedential purposes as well as more immediate ones."); *see also Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000) (concluding, "based on the extreme nature of the retaliation threatened against plaintiffs coupled with their highly vulnerable status," that the plaintiffs, Chinese workers complaining about working conditions, "reasonably fear severe retaliation, and that this fear outweighs the interests in favor of open judicial proceedings"). Indeed, we have held that, even though the "use of a pseudonym runs afoul of the public's common law right of access to judicial proceedings[,]" litigants may proceed anonymously in exceptional cases where a reasonable fear of severe harm exists. *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quotation marks and citations omitted). As for the separation between the merits of the case and the issue of proceeding anonymously, that seems self-evident. *See S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979) (holding that civil rights plaintiffs' right to remain anonymous was "plainly

independent and easily separable from ... their allegations that defendants have engaged in illegal sex discrimination" (quotation marks and citations omitted)).  In the mine run of cases, as here, the former has nothing to do with the latter, nor the latter with the former.

Finally, the denial of a motion to proceed anonymously is effectively unreviewable on appeal of a final judgment. Appellate review, after the litigant has amended the pleadings to include his or her true identity, would be of "no legal or practical value."  *Advanced Textile Corp.*, 214 F.3d at 1066. Thus, the appeal of an order denying a motion to proceed anonymously is readily distinguishable from the grant of a motion to compel disclosure of privileged information in discovery, which the Supreme Court has held may be remedied "by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence."  *Mohawk Indus., Inc.*, 558 U.S. at 109.  Unlike remedying wrongfully compelled privileged information by vacating and remanding, we cannot anonymize a litigant's already publicized identity with a new trial.  That bell cannot be unrung.

We therefore join the Fourth, Fifth, Seventh, and Ninth Circuits in concluding that orders denying motions to proceed anonymously are immediately appealable under the collateral order doctrine.  *See Vill. of Deerfield*, 819 F.3d at 376; *Advanced Textile Corp.*, 214 F.3d at 1067; *James*, 6 F.3d at 238; *S. Methodist Univ. Ass'n of Women L. Students*, 599 F.2d at 712.

**B.      The District Court did not abuse its discretion in denying Doe's motion.**

Having determined that we have jurisdiction, we now consider whether the District Court abused its discretion in denying Doe's motion to proceed anonymously.  To answer that question, we turn to the non-exhaustive, multi-factor test we employed in *Doe v. Megless*, where we asked whether the plaintiff presented a reasonable fear of severe harm meriting an exception to "the public's common law right of access to judicial proceedings."  654 F.3d at 408 (citation omitted); *see* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]").  The factors in favor of anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Megless*, 654 F.3d at 409 (citation omitted).   The factors advising against anonymity include:

> (1) the universal level of public interest in access
> to the identities of litigants; (2) whether, because
> of the subject matter of this litigation, the status
> of the litigant as a public figure, or otherwise,
> there is a particularly strong interest in knowing
> the litigant's identities, beyond the public's
> interest which is normally obtained; and (3)
> whether the opposition to pseudonym by
> counsel, the public, or the press is illegitimately
> motivated.

*Id.* (citation omitted).

The *Megless* factors require a fact-specific, case-by-case analysis. Here, Doe argues that she will face harassment, reputational damage, economic harm, and professional stigma, as well as the publicizing of very personal information involving her minor children, pregnancy, and miscarriage, if she is forced to reveal her name. She says that the District Court erred because, rather than focusing on the *Megless* factors, it premised its conclusion on the generalization that employment discrimination cases are not normally the type of cases in which anonymity is appropriate. She also challenges the Court's weighing of three of the *Megless* factors. Specifically, she says that the Court abused its discretion when assessing the "magnitude of the public interest in maintaining anonymity," whether she had "illegitimate ulterior motives," and the "level of public interest in access to [her] identit[y.]" *Megless*, 654 F.3d at 409 (citation omitted). The College, of course, responds that the District Court correctly balanced the *Megless* factors and was within its discretion in finding nothing exceptional about Doe's suit. It characterizes the dispute as a "garden-variety employment discrimination case." (Answering Br. at 12.)

Doe's first argument, that the District Court denied her motion not due to the *Megless* factors but because employment discrimination cases are not typically given anonymity, is based on an unfair reading of the Court's decision. The District Court did balance the *Megless* factors. It did not say or imply that its decision turned on Doe's claim being about employment discrimination. It merely observed that, with regard to a need for anonymity, her case was not meaningfully different from other employment disputes, which is true.

Nor do Doe's quibbles with the District Court's weighing of specific *Megless* factors fare any better. Under the "public interest in maintaining anonymity" factor, Doe contends that the Court failed to consider her evidence and thus improperly held that the factor weighed against anonymity. But, as we explained in *Megless*, that factor requires a showing that, if anonymity is denied, "other[s] similarly situated [will] be deterred from litigating claims … the public would like to have litigated[.]" 654 F.3d at 410. Doe has not made that showing—certainly not in so clear a manner as to persuade us that the District Court abused its discretion in concluding the factor weighed against her.[5] Further, a news article Doe

---

[5] Doe's cited cases are materially distinguishable because they evaluate motions to proceed anonymously under factually dissimilar circumstances. She first refers to cases in which the plaintiff sought anonymity in proceedings related to allegations of sexual assault, which are not present in Doe's allegations. *See Doe v. Trishul Consultancy, LLC*, No. 18-16468, 2019 WL 4750078, at *5 (D.N.J. Sept. 30, 2019); *see also Doe v. Rider Univ.*, No. 16-4882, 2018 WL 3756950, at *5-6 (D.N.J. Aug. 7, 2018). Cases where litigants seek anonymity on account of allegedly malicious prosecution or

attached to her Complaint as evidence of sexism in academia does not bridge that gap. The District Court correctly concluded that the article, although supportive of the contention that gender bias negatively affects female professors, does not explain why denying Doe anonymity would dissuade similarly situated women in academia from seeking judicial relief.[6]

---

drug abuse treatment are also factually distinguishable from Doe's allegations. *See, e.g., Smith v. U.S. Office of Pers. Mgmt.*, No. 13-5235, 2014 WL 12768838, at *2 (E.D. Pa. Jan. 21, 2014) (granting unopposed motion to proceed anonymously where plaintiff feared stigma from drug addiction); *Doe v. Wozniak*, No. 08-1951, 2009 WL 10715510, at *4 (M.D. Pa. Mar. 3, 2009) (granting anonymity where plaintiff was allegedly charged with a felony without probable cause, the charges were dropped, and the plaintiff feared her teaching career would be jeopardized if the charges came to light).

[6] Doe also misquotes our precedent when she says that "harassment and ridicule along with other economical and reputational harm" is sufficient to permit anonymity. (Opening Br. at 28 (citation omitted).) While Ninth Circuit precedent may hold that anonymity can, in exceptional cases, "shield plaintiffs from economic injury[,]" *Advanced Textile Corp.*, 214 F.3d at 1070; *see also Doe v. Apstra, Inc.*, No. 18-04190, 2018 WL 4028679, at *1 (N.D. Cal. Aug. 23, 2018), we have held that it is "not enough" that "a plaintiff may suffer embarrassment or economic harm[,]" *Megless*, 654 F.3d at 408 (citation omitted).

Doe is also wrong in declaring that the District Court disregarded the "absence of illegitimate ulterior motives" factor. She contends that the factor should have weighed in favor of anonymity because the Court said she had no illegitimate ulterior motives for seeking to litigate under a pseudonym. But TCNJ correctly points out that the District Court adopted the magistrate judge's finding that the parallel factor *against* anonymity—namely, the absence of any illegitimate motive for opposing anonymity—also held true. Thus, since neither party was found to have ulterior motives, there was no abuse of discretion in concluding that the competing factors cancelled each other out in the balancing test.

Finally, Doe says that the District Court attributed improper weight to the "public interest in open judicial proceedings." (App. at 7.) To the contrary, though, the Court approached this factor with due discretion, "acknowledg[ing] the thumb on the scale that is the universal interest in favor of open judicial proceedings." (App. at 13 (quoting *Megless*, 654 F.3d at 411).) As we have noted, the public's interest in open judicial proceedings always runs counter to a litigant's interest in anonymity—the question is whether the interest in anonymity outweighs the public's interest. Nothing in the District Court's opinion suggests that it improperly weighed the public interest. Doe's cherry-picked quotations from cases where the public's interest in open judicial proceedings was outweighed by other concerns do not call into question the District Court's sound exercise of discretion in this matter.

### III.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's denial of Doe's motion to proceed anonymously.